NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

WILLIAM BANKHEAD,

        Plaintiff,

-against-

NICOLAS A. RENELIQUE,

        Defendant.

MEMORANDUM
AND ORDER
05-CV-2065 (ERK)

---------------------------------------X

KORMAN, United States District Judge:

Plaintiff, proceeding *pro se*, brings this "civil rights complaint" to challenge housing conditions at his Brooklyn apartment. Plaintiff seeks damages and "an emergency order for the secure of rights and safety of the plaintiff." Complaint at 4-5. The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 solely for the purpose of this Order, and directs plaintiff to amend his complaint within twenty (20) days of this Order as directed below.

Standard of Review

The Court construes plaintiff's pleadings liberally particularly because they allege civil rights violations. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); McEachin v. McGuinnis, 357 F.3d 197 (2d Cir. 2004). However, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over this action. See e.g., Rene v. Citibank NA, 32 F. Supp. 2d 539, 541-2 (E.D.N.Y. 1999) (dismissing *pro se* plaintiff's complaint for lack of subject matter jurisdiction). Further, under 28 U.S.C. § 1915 (e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(I) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

1

is immune from such relief."

Background

Plaintiff is a frequent litigator in this Court.[1] In the instant matter, plaintiff alleges that he and his wife contracted to rent a basement apartment at 1367 Hancock Street in Brooklyn, New York from the defendant on March 1, 2005 for a monthly rent of $500.00, including gas and electricity. Plaintiff filed this action on April 20, 2005.[2]

Plaintiff alleges that during March 2005, the first month of his tenancy, electricity was shut off "59 times, thereby striking fear in plaintiff, causing food spoilage[,]" the front building door was left open, and "defendant deliberately refused any kind of heat or plumbing" and "refused to return plaintiff the rental monies paid." Complaint at ¶ 9. He further alleges that based on defendant's belief that "plaintiff's country was the Dominican Republic,"[3] defendant placed a paper "white cross

---

[1] Plaintiff has filed seven other actions in this Court. An action filed in 1999 was settled for $250.00, Bankhead v. City Of New York, et al., 99-CV-03299 (ERK)(RML), and five actions filed in 2000 were consolidated by the Court and likewise settled for the sum of $250.00. Bankhead, et al v. City of New York, et al 00-CV-03249 (NGG)(RML); Bankhead v. City of New York, et al., 00-CV-03583(ERK)(RML); Bankhead, et al v. City of New York, et al, 00-CV-03584 (ERK) (RML); Bankhead v. City of New York, et al., 00-CV-03755(ERK)(RML); Bankhead v. City of New York, et al., 00-CV-03696 (ERK) (RML). The most recent case, filed October 25, 2004, was dismissed for failure to respond the Court's order to amend his complaint. Bankhead v. Sanabia et al., 04-CV-04573 (ERK)(LB). In at least one other action recently filed in this Court, plaintiff attested that he served as a paralegal "assisting" another *pro se* litigant. Bush v. NYC Parking Violations Bureau, 05-CV-2010 (RJD).

[2] By letter dated June 4, 2005, plaintiff informed the Court that he is currently incarcerated at Rikers Island.

[3] Plaintiff describes himself as "Hispanic American," but alleges that his wife is from the Dominican Republic. Complaint at ¶¶ 3, 6. Plaintiff states that during the discussion regarding the rental of the apartment, plaintiff's "country or origin" was raised. According to plaintiff,"[i]t was the perception of defendant that plaintiff's country was the Dominican Republic, and based upon that this was true [sic], but only of the wife of plaintiff. Plaintiff had never admitted or denied the same." Complaint at ¶ 6. Plaintiff states that defendant is Haitian American.

2

over the door and entry to plaintiff's room;" threatened to lock plaintiff from the building; "pounding, kicking upon the door and walls of the residence of plaintiff March 17, 2005, at 11:30 P.M. demanding that he leave the residence or defendant would change the locks;" and "allowing illegal narcotic usage within the building, and basement area so as to frighten and intimidate a perceived Dominican, the plaintiff." Complaint at ¶ 10.

Discussion

Plaintiff alleges that he brings this "civil rights complaint" under the "applicable" federal statutes, "including the Fair Housing Act, 42 U.S.C. § 3604." Complaint at ¶ 1. Plaintiff also alleges that this Court has jurisdiction pursuant to 42 U.S.C. § 1981 and 1982. Complaint at ¶ 2.

A. Landlord-Tenant Relations

Although plaintiff makes conclusory allegations that defendant discriminated against him on the basis of his national origin or "perceived" national origin, his complaint quite clearly arises out of a dispute with his landlord over housing conditions. Landlord-tenant relations are a matter of state law. Hearn v. Lin, No. 01-CV-8208, 2002 WL 720829 (E.D.N.Y. Feb. 14, 2002); See McAllan v. Malatzky, No. 97 CV 8291, 1998 WL 24369, at *2-3 (S.D.N.Y. Jan. 22, 1998) (no subject matter jurisdiction where plaintiff attempted to recloak his charges regarding a state housing court matter as a violation of his constitutional rights), aff'd, 173 F.3d 845 (table) (2d Cir. 1999); DiNapoli v. DiNapoli, No. 95 Civ.7872, 1995 WL 555740, at *1 (S.D.N.Y. Sept. 19, 1995) (federal courts do not have subject matter jurisdiction over landlord-tenant matters); Chiania v. Broadmoor Associates, No. 94 Civ. 0613, 1994 WL 30412, at *1 (S.D.N.Y. Feb. 2, 1994) (finding no subject matter jurisdiction over landlord-tenant matters). Plaintiff's complaint may be an attempt to move a breach

---

Complaint at ¶ 4.

3

of lease claim from housing court where it belongs into the federal court. See National Cold Storage Co. v. Port of New York Authority, 286 F. Supp. 1016, 1018-19 (S.D.N.Y. 1968) (Fourteenth amendment claim "unsubstantial" and does not provide district court with federal question jurisdiction over what is a state law claim). The Court is not the proper forum to resolve plaintiff's claims regarding the provision of services and safety issues in the apartment he rented at 1367 Hancock Street. Without offering any opinion on the merits of his claims, plaintiff should pursue these matters in housing court

B. Fair Housing Act

Plaintiff's complaint fails to state a claim under either the Fair Housing Act. Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3619, the Fair Housing Act ("FHA" or "Act"), forbids discrimination in making available or providing services related to housing. Congress's purpose in enacting the Act was "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. To state a claim under the FHA, whose primary purpose is to proscribe discrimination in the sale, rental, financing or brokerage of private housing, Otero v. N.Y. City Housing Auth., 484 F.2d 1122 (2d Cir. 1973), the illegal action must have a discriminatory effect on the availability of housing. Coalition of Bedford-Stuyvesant Block Ass'n, Inc. v. Cuomo, 651 F. Supp. 1202, 1208 (E.D.N.Y. 1987) (citing Southend Neighborhood Improvement Assoc. v. County of St. Clair, 743 F.2d 1207, 1209-10 (7th Cir. 1984)). Furthermore, not every action which produces discriminatory effects on the availability of housing is necessarily illegal. Metro. Housing Dev. Corp. v. Vill. of Arlington Heights, 558 F.2d 1283 (7th Cir. 1977).

Plaintiff first claims that defendant violated 42 U.S.C. § 3604 of the Fair Housing Act. Section 3604(a) of the FHA makes it unlawful to "refuse to sell or rent after the making of a bona

fide offer ... or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The scope of this section, however, has been limited to the refusal to sell or rent housing and thus does not apply once the property has actually been rented. Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 694 (S.D.N.Y. 1996) (citing Southend, 743 F.2d at 1210) (section 3604(a) concerns only the *availability* of housing); see also Smart Unique Servs Corp. v. Mortgage Correspondents of Illinois, No. 94 Civ 1397, 1994 WL 274962, at *3 (N.D.Ill. Jun. 16, 1994) ("the FHA does not protect 'intangible interest in ... already-owned property'"). Plaintiff's complaint does not allege that he was denied the opportunity to rent housing within the meaning of section 3604(a) of the FHA.

Section 3604(b) of the FHA makes it unlawful to "discriminate against any person in terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The scope of section 3604(b) depends on whether the language "in connection therewith" refers to the "sale or rental of a dwelling" or more broadly to a "dwelling." Laramore v. Illinois Sports Facilities Auth., 722 F. Supp. 443, 452 (N.D.Ill.1989) (under either interpretation, plaintiffs' challenge to placement of new baseball stadium on basis that it would isolate African-American residents from shopping and other services did not state a claim under section 3604(b)).

Plaintiff alleges that the denial of heat and electricity constitutes discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling. Plaintiff's claim would extend section 3604(b) to apply to matters beyond the scope of the Fair Housing Act. Even liberally construed, plaintiff's complaint fails to state a claim under section 3604(b). Plaintiff does not allege discrimination relating to the acquisition of his apartment. See Southend, 743 F.2d at

1210 (§ 3604(b) prohibits "discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling."); Clifton Terrace Assocs., Ltd. v. United Tech. Corp., 929 F.2d 714, 719-20 (D.C.Cir 1991) (the term service in Section 3604(b) means services in connection with the acquisition of housing, not its maintenance; therefore Section 3604(b) does not apply to elevator repair services); Ross v. Midland Mgmt Co., No. 02 CV 8190, 2003 WL 21801023, at *4 (N.D. Ill. Aug. 1, 2003) ("the FHA does not create a private right of action to ensure habitability). In sum, plaintiff's allegations are not covered by sections 3604(a) and 3604(b). Thus, under the foregoing cases, plaintiff's complaint fails to state a claim upon which relief may be granted under the FHA.

Nevertheless, I need not decide the issue addressed above, which relies on cases not binding on me. Even if the FHA created a private right of action to ensure housing habitability, plaintiff's present complaint fails to state a claim. The Act prohibits practices that disproportionately affect minorities, U.S. v. Starrett City Associates, 840 F.2d 1096, 1100 (2d Cir. 1988) (citing, Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1036-37 (2d Cir.1979)). Plaintiff alleges neither a disparate impact (a facially neutral rule had a disproportionate impact on Hispanics) nor a claim for disparate treatment. "To establish a *prima facie* case [of disparate treatment] predicated upon 42 U.S.C. § 3604(b) the plaintiff must make a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to other under circumstances giving rise to a reasonable inference of prohibited discrimination." United States v. Town Hall Terrace Ass'n, No. 95-CV-0533, 1997 WL 128353, at *4 (W.D.N.Y. Mar. 14, 1997). Plaintiff concludes that defendant's motivation for his actions or inaction is defendant's perception of his national origin, however there is no allegation that other tenants are treated differently. Plaintiff merely concludes

that the bad housing conditions at his apartment must be because of his national origin. Such conclusory allegations fail to state a claim.

C. 42 U.S.C. § 1981 and 1982

Plaintiff's complaint also fails to state a claim under 42 U.S.C. §§ 1981 and 1982. Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981. Section 1982 provides that all citizens shall "have the same right . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." 42 U.S.C. § 1982. Essentially, the statute bars all racial discrimination in connection with the sale and rental of property. Jones v. Alfred Mayer Co., 392 U.S. 409, 413 (1968).

Assuming that these sections may be utilized to challenge discrimination on the basis of national origin,[4] and that these provisions apply to housing conditions in a rental apartment, see, e.g., Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237 (1969) ( § 1982 should not be given unduly

---

[4] Both §§ 1981 and 1982 protect against discrimination on the basis not only of race, but also of "ancestry or ethnic characteristics." Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (§ 1981); Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987) (§ 1982); see also Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987) (same). Several courts in this Circuit have held that American citizens of Hispanic background can state a claim of discrimination based upon race under sections 1981 and 1982. Jiminez v. Southridge Co-op., Section I, Inc. 626 F. Supp. 732, 735-36 (E.D.N.Y. 1985) (citing Garcia v. Gardner's Nurseries, Inc., 585 F. Supp. 369, 375 (D. Conn. 1984); Pollard v. City of Hartford, 539 F. Supp. 1156, 1164 (D. Conn. 1982); Cf. Khawaja v. Wyatt, 494 F. Supp. 302, 305 (W.D.N.Y. 1980)); see also Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (1968) (Puerto Rican individuals could maintain a suit for injunctive relief against city agency under section 1982).

narrow construction in light of "the broad and sweeping nature of the protection meant to be afforded by § 1 of the Civil Rights Act of 1866 ... from which § 1982 was derived"); Ross, 2003 WL 21801023, at *2 (we find that alleged inadequate maintenance of the apartment unit because of the plaintiff's race falls within section 1982), claims under these sections require plaintiff to demonstrate intentional discrimination, see Gen. Bldg. Contractors Assoc. v. Pennsylvania, 458 U.S. 375, 382-91 (1982) (§ 1981); Phillips v. Hunter Trails Cmty. Assoc., 685 F.2d 184, 187-89 (7th Cir.1982) ( § 1982). Plaintiff's allegations of ethnic animus here are wholly conclusory. Plaintiff alleges that defendant landlord, a Haitian-American, believed that plaintiff was Dominican when he rented the apartment, placed a paper "white cross" over the entrance to the apartment, pounded on his door and walls on March 17, 2005, threatened to lock plaintiff out of the building an allowed drug use in the building to "frighten and intimidate a perceived Dominican." Complaint at ¶ 6,10 and they met to discuss the rental of the apartment. These allegations are insufficient to state a claim on which relief may be granted under 42 U.S.C. § 1982. 28 U.S.C. § 1915(e)(2)(B)(ii).

### Leave to Amend

As presently stated, plaintiff's complaint fails to state a claim upon which relief may be granted. In deference to plaintiff's *pro se* status, and in an abundance of caution, the Court grants plaintiff twenty days to amend his complaint. See Cruz v. Gomez, 202 F.3d 593 (2d Cir. 2000) (*pro se* plaintiff should afforded opportunity to amend complaint prior to dismissal).

### Conclusion

Plaintiff shall be afforded twenty days leave to file an amended complaint. The amended complaint must set forth the facts giving rise to his claims against the defendant and shall be submitted to the Court within twenty days of the date of this Order. No summons shall issue at this

time and all further proceedings are stayed for twenty days for plaintiff to comply with this Order. If plaintiff fails to comply with this Order within the time allowed, the complaint shall be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Once submitted, the amended complaint shall be reviewed for compliance with this order and for sufficiency under 28 U.S.C. § 1915 (e)(2)(B). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Edward R. Korman
EDWARD R. KORMAN
United States District Judge

Dated: Brooklyn, New York
July 14, 2005